# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-3663

KENNETH A. MCCREADY,

*Plaintiff-Appellant,*

v.

JESSE WHITE, Secretary of State
of Illinois, *et al.*,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 03 C 5206—**Paul E. Plunkett**, *Judge.*

———————

SUBMITTED JUNE 29, 2005—DECIDED AUGUST 2, 2005

———————

Before EASTERBROOK, RIPPLE, and WILLIAMS, *Circuit
Judges.*

EASTERBROOK, *Circuit Judge.* The Driver's Privacy
Protection Act of 1994, 18 U.S.C. §§ 2721-25, regulates the
disclosure and use of motor vehicle records. See *Reno v.
Condon*, 528 U.S. 141 (2000); *Travis v. Reno*, 163 F.3d 1000
(7th Cir. 1998). The statute's caption—"Prohibition on
release and use of certain personal information from State
motor vehicle records"—conveys its gist. But Kenneth

McCready thinks that §2721(b) compels the release rather than the withholding of certain information, and he wants the district court to direct the State of Illinois to hand over tidbits that will help him conduct his business of buying cars auctioned to satisfy mechanics' liens.

McCready believes that some lien holders, with the connivance or acquiescence of the state's bureaucracy, remove other security interests from title documents issued after a sale. McCready sometimes purchases chattel paper representing other loans (or seeks to know who holds paper that he could purchase) and wants details from the state's records that would help him to trace or validate these loans and associated security interests. Illinois will not provide this information—whether as a matter of state law, or of its understanding of §2721(a), does not matter. Section 2721(b) says that information covered by §2721(a), and thus ordinarily held in confidence, "shall be disclosed for use in connection with matters of motor vehicle or driver safety and theft", and McCready contends that obliterating security interests from title records is a form of "theft." The district court, however, concluded that "theft" takes its meaning from what follows in the subsection. Here is the context:

> Personal information referred to in subsection (a) shall be disclosed for use in connection with matters of motor vehicle or driver safety and theft, motor vehicle emissions, motor vehicle product alterations, recalls, or advisories, performance monitoring of motor vehicles and dealers by motor vehicle manufacturers, and removal of non-owner records from the original owner records of motor vehicle manufacturers to carry out the purposes of titles I and IV of the Anti Car Theft Act of 1992, the Automobile Information Disclosure Act (15 U.S.C. 1231 et seq.), the Clean Air Act (42 U.S.C. 7401 et seq.), and chapters 301, 305, and 321-331 of title 49,

> and, subject to subsection (a)(2), may be disclosed as follows [in 14 additional subsections].

The judge read this language as compelling disclosure only to the extent required by one of the specified statutes. Another possibility is that the word "shall" in subsection (b) is permissive rather than compulsory. "Shall" is a notoriously slippery word that careful drafters avoid. See Bryan A. Garner, *A Dictionary of Modern Legal Usage* 939-41 (2d ed. 1995). See also *Castle Rock v. Gonzales*, No. 04-278 (U.S. June 27, 2005), slip op. 12; *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432-33 n.9 (1995). Subsection (b) is captioned "Permissible uses", not "Obligatory disclosures", which implies that "shall" equals "may" in this construction. The list after the language "may be disclosed as follows" covers the same sort of uses that follow the word "shall," so unless "shall" means "may" the state both must, and need not, disclose the same information to the same person.

McCready concedes that none of the statutes listed in subsection (b) requires states to disclose the information he wants. Nevertheless, he insists that the introductory portion of subsection (b) operates independently, that it compels rather than permits disclosure, and that omitting a security interest from a title document is "theft." Before we decide whether §2721(b) requires disclosure and, if so, of what—issues of first impression in any federal court— we must inquire whether people who want information under §2721(b) have a private right of action. That, too, is an issue of first impression and is the appropriate starting point—though not, as the defendants suppose, because it is "jurisdictional."

Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of federal subject-matter jurisdiction. Ensuring the existence of subject-matter jurisdiction is the court's first duty in every lawsuit. See *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998). It is not hard

to see a source of federal jurisdiction, however. McCready makes a claim that rests entirely on federal law, and 28 U.S.C. §1331 supplies jurisdiction to entertain such claims. That McCready's theory may be bad substantively does not negate that jurisdiction. See *Bell v. Hood*, 327 U.S. 678 (1946). Although some language in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986), might have been read to imply that the existence of a private right of action under federal law is essential to jurisdiction, the opinion in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, No. 04-603 (U.S. June 13, 2005), slip op. 7-11, puts the kibosh on that possibility. The district court had jurisdiction.

What is missing is not jurisdiction but a right of action. The statute authorizes private suits, but only by persons whose information has been disclosed improperly. 18 U.S.C. §2724(a). McCready tries to avoid this limitation by invoking 42 U.S.C. §1983, which may supply a claim against state actors even when the underlying statute lacks express authorization for private litigation. See *Maine v. Thiboutot*, 448 U.S. 1 (1980). Yet §1983 provides a remedy only for the violation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. "Rights" differ from "broader or vaguer 'benefits' or 'interests'" that some statutes create. See *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002). The Court concluded in *Gonzaga* that the existence of personal rights is essential to a claim under §1983 and that the standard for "discerning whether personal rights exist in the §1983 context" is no different from that "in discerning whether personal rights exist in the implied right of action context." *Id.* at 285. This means concretely that only statutes conferring rights on identifiable persons may be enforced through §1983—and the Court added that "if Congress wishes to create new rights enforceable under §1983, it must do so in clear and unambiguous terms—no less and no more than what is required for Congress to create new rights enforceable under an

implied private right of action." *Id.* at 290. The Court's oxymoron—how can an "implied" right of action be phrased in "clear and unambiguous terms," when statutory *silence* is what poses the question whether a right may be implied?—does not detract from the point of its message: §1983 depends on person-specific "rights." What must be "clear and unambiguous" in the Court's formulation is the right-creating language.

Any possibility that *Gonzaga* is limited to statutes that rest on the spending power (as the law in *Gonzaga* did) has been dispelled by *Rancho Palos Verdes v. Abrams*, 125 S. Ct. 1453, 1458 (2005), which treats *Gonzaga* as establishing the effect of §1983 itself. Thus we must ask whether §2721(b) creates person-specific rights, and it does not take close analysis to produce a negative answer. The rule is phrased in the passive (information "shall be disclosed") and does not say either who does the disclosing or who is entitled to receive information. The list after the phrase "may be disclosed as follows" does identify some beneficiaries—but McCready is not among them, and the use of "may" demonstrates that even those who are on the list lack enforceable rights. The language on which McCready relies stops well short of creating an individual entitlement along the lines that the Court has deemed sufficient in the past. Compare *Cannon v. University of Chicago*, 441 U.S. 677 (1979), and *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992), with *Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979), and *Karahalios v. National Federation of Federal Employees*, 489 U.S. 527 (1989). "For a statute to create . . . private rights, its text must be phrased in terms of the persons benefited." *Gonzaga*, 536 U.S. at 284 (internal quotation marks omitted). Section 2721(b) does not confer entitlements on identified beneficiaries. Because McCready is no different from any other member of the public, so far as §2721(b) is concerned, he can't use §1983 to supply the private right of action missing from §2724(a).

AFFIRMED

A true Copy:

    Teste:

                            _____
                            *Clerk of the United States Court of*
                            *Appeals for the Seventh Circuit*